ZIMMERMAN v. DEAN.

1. CHARGE.—A judgment will not be reversed for isolated expressions in the charge, which tend to mislead, when upon consideration of the whole charge the jury could not misunderstand what was meant.

2. HUSBAND AND WIFE—CREDITORS—FRAUD.—An insolvent husband may give his services and those of his minor children to his wife as against his creditors.

3. NEW TRIAL.—FINDING OF FACT by Circuit Judge on motion for new trial cannot be reviewed here.

Before ALDRICH, J., Spartanburg, December, 1897. Affirmed.

Action in claim and delivery by Rosa Zimmerman *v*. Geo. B. Dean, sheriff. From judgment for plaintiff, defendant appeals.

*Messrs. Bomar & Simpson,* for appellant, cite: *As to first and second exceptions:* 25 S. C., 275. *As to third exception:* 27 S. C., 421; 35 S. C., 208; Con. 1868, art, 14, sec. 8.

*Messrs. Duncan & Sanders,* contra, cite: *As to first and second exceptions:* 40 S. C., 234; 49 S. C., 303; 46 S. C., 219; 34 S. C., 343; 44 S. C., 547. *As to fourth and fifth exceptions:* 51 S. C., 549; 2 Strob., 232.

January 6, 1899. The opinion of the Court was delivered by

MR. JUSTICE GARY. The defendant, as sheriff, levied upon certain cotton as the property of L. C. Zimmerman. The plaintiff, wife of the said L. C. Zimmerman, brought this action for claim and delivery of the cotton, and recovered a verdict for its possession and for $195.46 damages. The cotton was raised on plaintiff's land; the defendant contended that it was raised by L. C. Zimmerman. One of the circumstances relied upon to establish this fact was that the cotton was marked in his name. The appellant's attorneys, in their argument, say: "The questions of fact in the case were whether he had raised the cotton under an implied contract of rental, or by permission of his wife, she suffering him to make and own it, using her land and stock, or whether he had given her his services and all the crop belonging to her."

The defendant appealed upon exceptions, the first and sec-

ond of which allege that the trial Judge erred: 1st. "In charging the jury as follows: 'When a crop is raised upon the lands of another by some one who acts as a cropper or farm hand, or a person working for a part of the crop, then in law that crop belongs to the landlord alone.' It is true, the cropper or renter, or person working for a portion of the crop, has, under the statutory enactment, a right whereby he can recover from the crop his proportion of his hire out of it; but up to the time of the partition of the crop, if it is to be divided in kind, the crop belongs to the landowner;' the error in such charge being, (a) that there is no such principle of law that in such cases the crop, until divided, belongs to the landlord; and (b) that it was erroneous to use the words 'cropper,' 'farm hand,' 'person working for part of the crop,' and 'renter,' as synonymous, and as occupying the same relation to the crop raised, and to the landlord. 2d. In charging the jury as follows: 'Now an execution under a judgment could not be levied upon the property of the renter in the share of the crop prior to the division of that crop and the setting off to the renter his part, because the legal title to the crop prior to that division of it, is in the landlord,' the error being in charging that in law the title of the crop made by one who rents lands is in the landlord before a division, and not in the renter, who has rented the land, and has it in his charge, with exclusive dominion over it." That part of his Honor's charge relating to the questions raised by these exceptions is as follows: "Now, gentlemen, in regard to the facts in this case, I can be of very little assistance to you, as I am not allowed to charge upon the facts or to intimate an opinion. But, speaking generally, where a crop is raised upon the lands of another by some one who acts as a cropper or a farm hand, or a person working for a part of the crop, then in law that crop belongs to the landlord, and the landlord alone. It is true, the cropper or renter, or person working for a portion of the crop, has, under the statutory enactments, a right whereby he can re-

cover from the crop his proportion or his hire out of it. But up to the time of the partition of the crop, if it is to be divided in kind, the crop belongs to the landlord, the landowner. Now, when one rents land, or hires land, or gets land from another, and that person goes and makes a crop upon it, he exercising dominion over this land, using it as his own, for his own purposes and by his own means, then he is the landlord, because the rental of land, or the hire of land, for a year is equivalent to a conveyance for that length of time of the premises rented, and the renter would be the owner of the crop. Now, an execution under a judgment could not be levied upon the property of the renter in the share of the crop prior to the division of that crop and the setting off to the renter of his part, because the legal title to the crop, prior to that division of it, is in the landlord. So one claiming rent, for instance, or labor, claiming labor or a debt from the real owner of the land, could not go upon the crop of the person who has rented the land, acquired the right to the use of that land for a given time, and levy an execution against the owner of that land. He might do it against the land itself, but not against the crop, because the legal title to that crop is in the renter of that land for the time being. * * * Now, therefore, among the questions you must determine are: Was there a crop raised? Who made the crop? Who owned the land? Did the persons who made the crop, make it as renters, or as croppers, or how? As you determine these questions, apply the principles of law which I have endeavored to explain to you, and your duty will be manifest." While there are expressions which tend to mislead, if they stood alone, still when these are considered in connection with the entire charge, there was no room for the jury to misunderstand what was meant, and these exceptions are overruled.

The third exception charges error: 3d. "In charging the jury that a man has a right to give his services to his wife, if he sees fit, and also the services of his children; when, as it is respectfully submitted, a man who is in debt has no

more right, as against the claims of his creditors, to give his own services or those of his minor childrn to his wife, than he would have to give away his property to her." In his charge, the presiding Judge says: "The plaintiff's counsel in their arguments requested me, verbally, to charge, that a husband has a right to give his services to his wife, if he sees fit, and that is correct law; and he may also, as he has control and dominion over it, give the services of his children." If the husband gave to the plaintiff his and his children's services, all the testimony tends to show that it was before the services were rendered. This question is settled by the case of *Hodges* v. *Cobb,* 8 Rich., 56, in which the Court says: "All must agree, that if Moseley had been so unmindful of the duties of life as to work not at all, or for half price, or for nothing, his creditors could not have picked him up with their executions. That he should have left his family to starve, would have brought neither consolation nor profit to them. What stimulated his exertions—what produced the fruits that made the subject of this litigation? The answer is, that a beneficence cf White, a stranger to Moseley's creditors, towards Mrs. Moseley, his sister-in-law, set in motion the debtor's industry, and the use of White's capital. Mrs. Moseley, being the meritorious cause and object, produced the fruits now in contest. These have been created by a cause and a means over which the creditors had no control, and from whose liens they were wholly free, and when they were in posse merely, were devoted, by agreement, to an object most worthy, in the eye of all sound morality. It is very true, on the other hand, that this debtor could not have set apart the fruits of his labor, after they had been earned, in trust for his wife and children. But if he had agreed to sell his labor to White, on terms the most improvident, as for his mere maintenance or for less, how could his creditors have rectified that?" There is no constitutional provision against this construction of the law, as it was not a gift of something *in esse,* nor of anything that would become *in esse,* except by the labor of the hus-

band.    Sound morality and public policy sustain this view. The exception raising this question is overruled.

The fourth and fifth exceptions allege error on the part of the presiding Judge in refusing to grant a new trial, but as they only involve questions of fact, they can not, under the well settled rule of this Court, be considered.

Judgment affirmed.